IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BEAUFORT NICKSON,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-2203 |
| **ADVANCED MARKETING &** | * | |
| **PROCESSING, INC. d/b/a** | | |
| **PROTECT MY CAR,** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Beaufort Nickson filed suit against Advanced Marketing and Processing, Inc. d/b/a Protect My Car ("PMC") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) and (c). ECF 1. Nickson, who is unrepresented, claims PMC called him with an automatic telephone dialing system and made solicitations to his personal telephone number, which he had registered on the national do-not-call registry. He seeks actual, statutory, and treble damages under the TCPA. ECF 1, at 11. PMC moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF 16. The motion is fully briefed. ECF 22 & 23. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the following reasons, the motion to dismiss is granted. The complaint is dismissed without prejudice.

**I.     Background**

Nickson alleges the following facts in his complaint, including those contained in documents attached to the complaint.[1]  On November 16, 2018, Nickson registered his telephone number on the "National Do Not Call Registry."  *See* ECF 1, ¶ 12; ECF 1-1.  From September 24 to October 12, 2021, Nickson received five calls on his personal cell phone, each allegedly from PMC.[2]  ECF 1, ¶¶ 13–18.

Nickson received the first call on September 24 from (202) 600-9197.  *Id.* ¶ 13.  He did not answer.  *Id*.  When he dialed that number back thirty-five minutes later, a recorded message directed him to "press 1" to speak to a representative.  *Id.* ¶ 14.  Upon doing so, Nickson was connected to an individual who identified herself as "Lisa with Protect My Car."  *Id.*  She stated that "we are giving [you] a call to save some money on your next breakdown."  *Id.*  Nickson asked how Lisa got his number, to which she replied: "We have many forms of marketing."  *Id.*

Nickson received a second call on September 27 from (908) 588-7130.  *Id.* ¶ 15.  When Nickson answered, the caller, who Nickson alleges is "Defendant's representative," identified himself as "John."  *Id.*  Nickson asked John where he was located and John replied that his office was in Tampa, Florida.  *Id.*  Nickson's caller ID, however, displayed that the call came from New Jersey.  *Id.*  John then transferred Nickson to an individual named Theodore.  *Id.*  Nickson listened to Theodore's "sales pitch and told him he was not interested."  *Id.*

---

[1] These documents are: (1) an email confirmation of Nickson's number on the do-not-call registry, ECF 1-1; (2) screenshots of contact entries in Nickson's phone in which PMC is labeled as the caller, ECF 1-2; (3) a phone log highlighting alleged PMC calls, ECF 1-3; and (4) an email from Credit Karma informing Nickson of a data breach, ECF 1-4.  Because these documents are attached to the complaint, the Court considers them at this stage.  Fed. R. Civ. P. 10(c).

[2] Advanced Marketing does not dispute that it does business as Protect My Car.  *See* ECF 16-1.

2

Nickson received a third call on October 8 from (775) 460-4453. *Id.* ¶ 16. Nickson answered, heard beeping sounds, and hung up. *Id.* He then called that number back and heard an automatic greeting that stated, "Thank you for calling Protect My Car." *Id*. The greeting then prompted Nickson to "press 1" to speak to a representative, which he did. *Id.* Nickson asked the representative where she was calling from; she responded that she was "in the main office in Saint Petersburg Florida." *Id.* Nickson informed her that his caller ID displayed that the call came from Nevada. *Id.* Nickson then told the representative that his number is on the "Do Not Call" list and asked why he was getting calls; the representative replied that she did not know. *Id.* When Nickson asked to speak to a supervisor, he was transferred to a sales manager. *Id.* The manager informed him that "we are an 'Opt-In' company" and suggested they may have gotten his cell phone number from a website. *Id*. Nickson replied that he had never filled out "webform submissions." *Id*.

Nickson received the fourth call on October 11 from (202) 657-0235. Nickson answered and heard beeping sounds before the call dropped. *Id.* ¶ 17.

Nickson received the fifth and final call that he attributes to PMC on October 12 from the same number as the fourth call, (202) 657-0235. *Id.* ¶ 18. When Nickson answered, he heard beeping sounds and a short pause before being connected to a live representative who identified herself as "what sound [sic] like 'Jaquitta.'" *Id.*

Nickson alleges that each call upset and aggravated him. ECF 1, ¶¶ 14, 16–19. He claims he did not consent to receive calls from PMC. *Id.* ¶ 25. He and PMC never had a business relationship, and Nickson was never a PMC customer. *Id.* ¶ 26.

Nickson alleges that, based on the discrepancies between the incoming calls' area codes and the locations the callers told him they were calling from, each phone number was "spoofed,"

in some instances to resemble a number from the area in which he resides.[3] *Id.* ¶¶ 33–37. Nickson further alleges that each call was made using an automatic telephone dialing system ("ATDS") based on "the frequency in which the calls came in, hearing beeping sounds with short pause before a live person came on the call," and the calls being from "multiple spoofed phone numbers." *Id.* ¶¶ 21–22.

## II. Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted

---

[3] Caller ID "spoofing" occurs when a caller falsifies the identifying information transmitted to a Caller ID display. *See United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 847 (C.D. Ill. 2017).


inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).  The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).[4]

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Accordingly, the Court must construe *pro se* pleadings liberally.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).  But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of

---

[4] Nickson attaches transcripts from three different alleged calls with PMC representatives to his opposition.  ECF 22-2 – 22-4.  Generally, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion.  *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011).  One exception is that a court may consider documents referred to in the complaint if they are "integral to and explicitly relied on in the complaint" and their authenticity is not challenged.  *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  An integral document is one that "by its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 (internal quotation omitted).  Courts have found that the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and documents that "constitute the core of the parties' contractual relationship" in a breach of contract dispute are integral.  *See Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. JFM-10-206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010) (internal citations omitted).  The transcripts that Nickson submits do not, by their very existence, "give[] rise to the legal rights asserted." *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611.  At the core of a TCPA claim is telephone communications from a party who allegedly violated the TCPA.  To support his TCPA claims, Nickson relies on what the transcripts purport to show was said during those communications.  But transcripts of recordings do not give rise to Nickson's TCPA claims; the calls themselves do.  The Court will not consider the transcripts attached to the opposition when deciding the motion to dismiss.

the plaintiff [;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a *pro se* complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

### III.   Discussion

Congress enacted the TCPA in 1991 to "prevent abusive telephone marketing practices" as a "response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.'" *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 648–49 (4th Cir. 2019) (quoting Pub. L. No. 102-243, 105 Stat. 2394 (1991)). Nickson asserts two TCPA claims: first, that PMC violated section 227(b) of the TCPA by using an automatic telephone dialing system; and second, that PMC violated section 227(c) of the TCPA by making solicitation calls to his personal telephone number, which is registered on the national do-not-call registry.

#### A.   Section 227(b) of the TCPA

Section 227(b) of the TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . or any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under section 227(b) when, as here, a plaintiff does not allege use of an artificial or prerecorded voice, "a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an automatic dialing system; (3) without the plaintiff's prior express consent." *Wilson v. PL Phase One*

6

*Operations L.P.*, 422 F. Supp. 3d 971, 979 (D. Md. 2019) (citing *Hossfeld v. Gov't Employees Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015)). PMC argues Nickson has not sufficiently alleged that PMC called his cell phone or that PMC called him using an automatic telephone dialing system.

 1. **PMC as caller**

PMC argues Nickson does not sufficiently allege that PMC made the five phone calls referenced in the complaint. The Court addresses each alleged call.

The first call was made on September 24, 2021. Nickson did not recognize the number and did not answer the call. But, thirty-five minutes later, he called the same number back, and after following the instructions of an automatic prompt, heard the voice of a sales representative who identified herself as "Lisa with Protect My Car." ECF 1, ¶ 14. It is reasonable to infer that the owner of the number that Nickson called was the owner of the same number that called him minutes earlier. Nickson has plausibly alleged that PMC made the September 24 call. The third call, on October 8, involves similar allegations and leads to the same reasonable inference that PMC called Nickson on that date.

Nickson answered the second call on September 27 and spoke to "Defendant's representative[s]" John and Theodore. ECF 1, ¶ 15. Nickson does not allege that the callers identified themselves as PMC representatives. He offers only a conclusory statement that John and Theodore were "Defendant's representative[s]." *Id.* His phone's contact entry for this call is titled "Protect My Car," which offers no insight beyond his own labeling of the call. ECF 1-2, at 2. These conclusory allegations fail to sufficiently allege that PMC made the September 27 call. *See Worsham v. Direct Energy Servs., LLC*, No. SAG-20-193, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021) (finding conclusory allegations that calls came from a particular defendant are

7

insufficient when a plaintiff "offers nothing but unbridled speculation" as to the caller's identity and the court cannot discern who made calls).

The fourth and fifth calls on October 11 and 12, respectively, came from the same phone number, (202) 657-0235. It can reasonably be inferred that, because these calls came from the same number, they came from the same caller. *See Worsham*, 2021 WL 948819, at *4 n.2 (finding plaintiff sufficiently alleged that calls from the same "spoofed" number originated from the same caller at the motion to dismiss stage). But Nickson does not allege that anyone he spoke to during these calls stated that they worked for PMC.[5] *See* ECF 1, ¶¶ 17–18. His phone's contact entry for these two calls is titled "Spoke With Jaquitta With Protect My Car," which offers only his own labeling of the calls. ECF 1-2, at 4. The Court cannot reasonably infer from these conclusory allegations that PMC made the fourth and fifth calls. *See Worsham*, 2021 WL 948819, at *3.

Additionally, the second, fourth, and fifth calls could have come from any number of other companies. Indeed, Nickson has alleged in other cases filed in this court that he received numerous spam calls from other companies. *See Worsham*, 2021 WL 948819, at *3 (noting that a court may look to a plaintiff's litigation history to determine if others are "engaged in telemarketing efforts directed at [them]"); *see also Nickson v. All Web Leads Inc.*, No. PJM-22-1575 (D. Md. June 27, 2022), ECF 1, at 3 (complaint alleging numerous telemarketing calls from a "202" area code on September 27, 2021 and a call on September 24, 2021); *Nickson v. Assurance*, No. PX-22-2495 (D. Md. Sept. 29, 2022), ECF 1 (complaint alleging TCPA violations); *Nickson v. Excel Impact*,

---

[5] Nickson does allege in the complaint that during one of these calls, he spoke to "Defendant's representative 'Jessie.'" ECF 1, ¶ 36. Nickson contends in his opposition, for the first time, that when he got the October 8 call, he called the number back and spoke to "Jesse," who "stated that she was with 'protect my car.'" *See* ECF 22, at 7. But this allegation—that Jesse stated she was with PMC—does not appear in the complaint, and Nickson may not amend his complaint through opposition briefing. *See Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 334 (D. Md. 2012).

No. TDC-22-1574 (D. Md. June 27, 2022) (same); *Nickson v. Quinnstreet, Inc.*, No. DLB-22-1166 (D. Md. May 16, 2022) (same).  He also alleges that by the time he filed the complaint in this case, one of the "spoofed" numbers he attributes to PMC was being used by an entirely different company.  *See* ECF 1, ¶ 37.

Nickson has plausibly alleged that PMC made the calls on September 24 and October 8, but not the calls on September 27, October 11, and October 12.

### 2. Use of ATDS

PMC next argues that Nickson has not plausibly alleged that PMC called him using an automatic telephone dialing system.  The TCPA defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers."  47 U.S.C. § 227(a)(1).  To qualify as an ATDS, a device must be able to "either store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."  *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

Nickson offers the following allegations relevant to ATDS use: (1) PMC used "spoofed" phone numbers; (2) "the frequency in which the calls came in," namely five calls over an eighteen-day span; (3) during each call in which a live representative spoke, Nickson first heard a beeping sound and short pause; and (4) additional TCPA claims against PMC have been filed in multiple courts.  But none of these allegations suggests the calls were dialed by equipment that can store or produce telephone numbers "using a random or sequential number generator" and that can "dial such numbers."  47 U.S.C. § 227(a)(1).  Nickson's allegations negate, rather than support, an inference that PMC used an ATDS.  For instance, he alleges he spoke with a live person when he answered one call and when he returned another.  Speaking with a live person generally undercuts

allegations of ATDS use.  *See Worsham*, 2021 WL 948819, at *4; *see also Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (granting motion to dismiss because the allegation that the plaintiff "*spoke* with Defendant's representatives . . . negates a claim that the calls were made by an automated dialing system" and the plaintiff did not allege additional facts).

Nickson also alleges that PMC "bought or obtained [his] personal information fraudulently from a third-party vendor . . . ." ECF 1, ¶ 51; *see also* ECF 1-4 (credit agency email alerting Nickson that his personal data may have been compromised in a data breach).  If, as Nickson alleges, PMC obtained his number through a data breach (and thus had or stored his number before making the call), it is implausible to infer that PMC made the calls to his number using a device that stores a telephone number using a random or sequential generator or produces a telephone number using a random or sequential number generator.  *See Camunas v. Nat'l Republican Senatorial Comm.*, 570 F. Supp. 3d 288, 295 (E.D. Pa. 2021) (finding plaintiff did not allege use of ATDS where telephone numbers were previously stored in the defendant's system); *Timms v. USAA Fed. Savs. Bank*, 543 F. Supp. 3d 294, 299 (D.S.C. 2021) (finding "telephone numbers of members from a pre-created list of targeted accounts [which] are automatically dialed or dialed by an agent" does not meet the definition of an ATDS); *Hufnus v. DoNotPay, Inc.*, No. 20-701, 2021 WL 2585488, at *1–2 (N.D. Cal. June 24, 2021) (finding a platform does not qualify as an ATDS because it dialed numbers from a list created in a "non-random, non-sequential way"); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2021 WL 5040228, at *3 (N.D. Tex. Oct. 29, 2021) (finding a complaint stating that a system "has the capacity [to] store telephone numbers and to dial such number[s] from a list" does not sufficiently allege ATDS use).

The cases on which Nickson relies do not support his position.  In *Dendy v. Chartrand*, an ATDS claim survived a motion to dismiss because the plaintiff alleged that each of the calls

10

contained the same prerecorded message and were not manually made. No. 18-cv-1118-WPJ, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019). While the court noted the difficulty of alleging ATDS use before discovery, it found that, "at the very least, Plaintiff has stated that an artificial or prerecorded voice was used." *Id.* Here, Nickson does not allege the calls were prerecorded, contained the same message, or were not manually made.

Nickson also cites *Gonzalez v. HOSOPO Corp.*, where plaintiffs brought a TCPA class action against numerous companies and their ATDS claims survived a motion to dismiss. 371 F. Supp. 3d 26, 28, 35 (D. Mass. 2019). The first plaintiff, Davila-Lynch, alleged she received pre-recorded messages and noted lengthy pauses and clicks followed by silence before each call. *Id.* at 35. Nickson, by contrast, did not receive prerecorded messages. The allegations of the second plaintiff, Gonzalez, were "barely" sufficient to raise a plausible ATDS claim. *Id.* Gonzalez alleged he

> received calls from a "ViciDial predictive dialer" and a "Five9 virtual dialing system"; that there is "geographic distance between" him and the companies that called him; that the calls he received contained "scripted telemarketing pitches"; that he received eight calls in a period of about five weeks, including calls on five consecutive days between February 12 and February 16, 2018; and that his "experience" is apparently "not unique" as others have made online postings which claim to have received "scam" calls from Horizon Solar made from the same number that called his phone.

*Id.* (internal citations omitted). While Nickson similarly alleges a significant distance between him and PMC's calling location and a comparable volume of calls, he does not allege PMC called others using the same number or that he received a "scripted telemarketing" pitch, which may be indicative of the call being placed to numerous potential customers. *See id.*

The final case Nickson cites, *Callier v. MultiPlan*, No. EP-20-cv-00318-FM, 2021 WL 8053527 (W.D. Tex. Aug. 26, 2021), does not support his position. In that case, decided after the Supreme Court's decision in *Facebook*, the plaintiff alleged that he had received several calls from

11

a "spoofed" phone number, that he had received nine calls in a 14-month period, and that he had received prerecorded messages that he claimed were placed *en masse*. *Id.* at *2. The court found that the plaintiff plausibly alleged that "the underlying calls [were] attributable to a random or sequential number generator." *Id.* at *18 (discussing *Facebook v. Duguid*, 141 S. Ct. 1163 (2021)). Here, Nickson does not allege the calls were prerecorded or that his number was stored or produced by a random or sequential number generator.

The Court recognizes that plaintiffs have a "distinct factual disadvantage" in alleging the use of ATDS equipment pre-discovery, but they still "must allege some facts permitting an inference that an ATDS was used to transmit the communications at issue." *Thomas-Lawson v. Koons Ford of Balt., Inc.*, No. SAG-19-3031, 2020 WL 1675990, at *4 (D. Md. Apr. 6, 2020) (dismissing TCPA claim when the "bald and conclusory facts alleged by Plaintiff [did] not suggest that [the defendant] used an automatic system of any sort"); *see Worsham v. Discount Power, Inc.*, No. RDB-20-0008, 2021 WL 3212589, at *3 (D. Md. July 29, 2021) (dismissing TCPA claim because the plaintiff "fail[ed] to assert any facts to support this allegation that [the defendant] used an ATDS"). Even with a factual disadvantage, this is not impossible for plaintiffs. In *Wilson v. PL Phase One Operations L.P.*, for instance, the plaintiffs alleged the defendant used an ATDS because they asserted the defendant used "TXT Live!," an online texting platform that was "programmed to randomly select phone numbers . . . and automatically send the relevant text messages to those cell phones." 422 F. Supp. 3d at 981. No similar allegations are found here. Nickson does not sufficiently allege that PMC called him using an ATDS.

Nickson's section 227(b) claim is dismissed without prejudice.

**B. Section 227(c) of the TCPA**

Section 227(c) of the TCPA creates a private right of action for individuals who "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" TCPA regulations. 47 U.S.C. § 227(c)(5); *see Wilson*, 422 F. Supp. 3d at 984. Those regulations, in turn, provide that "no person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."[6] 47 C.F.R. § 64.1200(c)(2); *see Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019). To state a claim under section 227(c), Nickson must plausibly allege that his phone number was on the national do-not-call registry and that PMC made more than one telephone solicitation to him in a year. *See Wilson*, 422 F. Supp. 3d at 984.

Nickson has plausibly alleged that PMC called him on September 24 and October 8 and that he registered his number on the national do-not-call registry before receiving these calls. *See* ECF 1-1. PMC argues that Nickson does not adequately allege that more than one of the calls was a telephone solicitation. "Telephone solicitation" is defined as

> [t]he initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, or (C) by a tax-exempt nonprofit organization.

---

[6] "The Fourth Circuit has not addressed whether cell phone owners are considered 'residential telephone subscribers,'" and "[c]ourts that have addressed the issue are split as to whether the TCPA extends to wireless telephone numbers." *Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296-RJC-DSC, 2023 WL 2472649, at *2 (W.D.N.C. Feb. 8, 2023) (finding the current language of the TCPA does not include cell phones). *But see Boger v. Citrix Sys., Inc.*, No. PX-19-1234, 2020 WL 1033566, at *4 (D. Md. Mar. 3, 2020) (declining to rule at motion to dismiss stage whether plaintiff's cell phone functioned as a residential number for TCPA purposes); *Boardman v. Green Dot Corp.*, No. 3:21-cv-174-FDW-DSC, 2021 WL 3699856, at *3 (W.D.N.C. Aug. 19, 2021) (finding "a cellphone may plausibly be alleged as residential for purposes of the TCPA"). If Nickson's number is not residential within the meaning of the TCPA, he would fail to state a section 227(c) claim. The Court declines to decide the issue and assumes, without deciding, that his number is residential.

47 U.S.C. § 227(a)(4).

Nickson did not answer the incoming call on September 24, but upon calling back, he spoke to Lisa who said: "[W]e are giving you a call today regarding your recent insurance to save money and we are giving [you] a call to save some money on your next breakdown." ECF 1, ¶ 14. It can reasonably be inferred that the same sales pitch Nickson received when he called the number back would have been presented to him had he answered the initial call. Nickson plausibly alleges that the September 24 call was a solicitation. *See Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *6 (D. Md. Sept. 2, 2016) (finding allegations that defendant offered a travel package that would save plaintiff money sufficed to support section 227(c) solicitation claim).

The same cannot be said for the October 8 call. Nickson alleges that he did not answer the call, and when he called the number back minutes later, he was greeted by a representative of Protect My Car. He then alleges that he asked questions about their location and calling operations number. Unlike the September 24 call, he does not allege that anyone discussed insurance coverage, offered to help him save money, or otherwise "encourag[ed] the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4).

Section 227(c) requires that a plaintiff allege "more than one" telephone solicitation in a year. *Wilson*, 422 F. Supp. 3d at 984. Nickson alleges only one. The motion to dismiss Nickson's section 227(c) claim is granted without prejudice.

14

## IV. Conclusion

For the foregoing reasons, the complaint is dismissed without prejudice. A separate order follows.

8/2/2023
Date

Deborah L. Boardman
United States District Judge